UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

KIRA HORNE,               )
Plaintiff,                )
                          )
v.                        )
                          )
CITY OF DETROIT POLICE    )
OFFICER JOHN DOE #1, and  )
CITY OF DETROIT           )
Defendants.               )
_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff Kira Horne ("Horne"), by and through her attorneys, Olson PLLC, states the following for her Complaint against Defendant Police Officer John Doe #1 ("Doe #1") and Defendant City of Detroit ("City"):

1. This is a civil action arising under 42 U.S.C. § 1983 and common law avenues of recovery for deprivations of Plaintiff's rights.

2. Plaintiff sues the Officer Doe #1 in his individual capacity.


## JURISDICTION

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

## VENUE

4. Venue is proper under 28 U.S.C. § 1391(b).

5. At all times relevant herein, Plaintiff resided in and was a citizen of the City of Detroit, County of Wayne, and state of Michigan.

6. The incident giving rise to this case occurred in Wayne, Michigan.

7. Defendant Doe #1 was at all relevant times a City of Detroit Police Officer who acted under color of State law and is a "person" for purposes of a 42 U.S.C. § 1983 action.

8. Defendant City is a political subdivision of the State of Michigan acting under color of State law, and is a person for purposes of a 42 U.S.C. § 1983 action.

## COLOR OF STATE LAW

9. At all times relevant herein, Defendant Doe #1 acted under color of state law including statutes, ordinances, regulations, policies, customs and usages of the State of Michigan.

## FACTUAL BACKGROUND

10. On or about November 13, 2018, Plaintiff owned two dogs.

11. On or about November 13, 2018, Plaintiff resided with her dogs at 19319 Algonac, Detroit, Michigan 48234 ("Residence").

12. On November 13, 2019, Defendant Doe # 1 while executing a search warrant shot and killed Plaintiff's two dogs.

13. The November 13, 2018 Detroit Police Department Destruction of Animal Report states that Defendant Doe #1:

> ***observed a black pitbull and a tan pitbull showing his [sic] teeth, charging, and attempting to bite crew . . . fearing for his safety and the safety of other officers on scene fired five shots from his department issued Remington 870 shotgun . . . which all took effect neutralizing both animals***. ("DOA Report," Exhibit 1.).

14. The November 13, 2018 Detroit Police Department Destruction of Animal Report, "I conducted a review of that body camera video, and body camera footage of other crew members and found no discrepancies." (Exhibit 1.).

15. The DOA Report was ratified and approved all the way up the chain of command to Deputy Chief Marlon Wilson. (Exhibit 1, DOA Report.)

16. However, the City of Detroit's Citizen Complaint Subcommittee Report, CCR 70419, BPC 18-960 ("CCR," Exhibit 2) sustained Plaintiff's complaint that her dogs were wrongfully shot. (Exhibit 2.).

3

17. The CCR states that Defendant Doe #1 stated to CCR investigators that "***the dogs were causing a threat and he needed to neutralize them***." (Exhibit 2.).

18. The CCR further noted the DOA Report narrative that the dogs were charging, showing teeth and attempted to bite the crew. (*Cf.* Exhibits 2.)

19. The CCR concluded that:

***However, video footage and audio recordings captured did not show the dogs actin in an aggressive manner. The video footage and audio recordings also revealed that the [sic] Mr. Stackhouse, who was the owner of the dogs was seated in the view of the dogs. It appeared that dog (1) was coming towards Mr. Stackhouse.  At no time did any of the dogs charge at the officers, growl or try to bite them.***

***The actions of the officers were unjustified.***

***A preponderance of the evidence showed that the alleged conduct did occur, and that the actions of the officer violated DPD policy, procedure and training***. (Exhibit 2.).

20. The CCR Report identified Detroit Police Department Manual Directive 3-4.2 – 4.7 Dangerous Animals, which prohibits shooting dogs except to protect a member or person from imminent physical injury and there is no opportunity to retreat or other reasonable means to eliminate the threat, as the policy that Defendant Doe #1 violated. (Exhibit 2.).

21. Detroit Police Department Manual Directive 3-4.2 – 4.7 Dangerous Animals further provides that "before using deadly force, every

4

attempt will be made to use other reasonable means to contain the threat of a dangerous animal."  (Exhibit 2.).

22. Defendant Doe #1's seizure was unreasonable because the dogs did not present a threat of imminent harm to Defendant.

23. Indeed, as the CCR Report concluded, "at no time did any of the dogs charge at the officers, growl or try to bite them."  (Exhibit 2.).

24. Worse, Defendant Doe #1 apparently lied about it in his reporting of the incident and statements to investigators.

25. On information and belief, Defendant Doe #1 had no training with respect to dog encounters.

26. Such training is available, for free, through the United States Department of Justice Community Oriented Policing Services.

27. Plaintiff sought information regarding the incident giving rise to this case, including the identity of Defendant Doe #1 through a Freedom of Information Act ("FOIA") request.

28. However, the City of Detroit responded with information that redacted, *inter alia,* Defendant Doe #1's identity.

29. Accordingly, Plaintiff has initiated this matter against a "John Doe" Defendant police officer.

5

## COUNT I
## VIOLATIONS OF CIVIL RIGHTS
## 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
## AGAINST THE DEFENDANT DOE #1
## FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES
## AND ATTORNEY'S FEES

30.     Plaintiff re-alleges all of the preceding paragraphs.

31.     The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably seizing a citizen's property.

32.     "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), overruled on other grounds, *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (citation omitted).

33.     An individual has a Fourth Amendment property right in their pets. *San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977-78 (9th Cir. 2005); *Brown v. Battle Creek Police Department*, 844 F.3d 556, 568 (6th Cir. 2016).

34.     That an individual has a property right in their pets was clearly established in 2013.  *Brown*, 844 F.3d at 567.

35.     Pets are more than just a personal effect. *San Jose,* 402 F.3d at 975.

6

36. The emotional attachment to a pet is not comparable to a possessory interest in furniture or other inanimate property. *Id*.

37. Indeed, Plaintiff's Fourth Amendment interests involved are substantial because the bond between an owner and their pet is strong and enduring and Plaintiff thinks of their pet "in terms of an emotional relationship, rather than a property relationship." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003).

38. Defendant Doe #1's acts described herein were intentional, grossly negligent, amounted to reckless or callous indifference to Plaintiff's constitutional rights.

39. Defendant Doe #1's seizure of Plaintiff's dogs was objectively unreasonable.

40. No exigent circumstances warranted the intrusion involved in this case.

41. No governmental interest justifies the search or seizure involved in this case.

### COMPENSATORY DAMAGES

42. Under 42 U.S.C. § 1983 Plaintiff is entitled to an award of compensatory damages against each Defendant in his individual capacity, which includes "damages for the emotional distress suffered by Plaintiffs . . .

and any other injury that is the result of . . . the unlawful seizure of Plaintiffs'" dogs. *Moreno v. Hughes*, 157 F.Supp.3d 687, 692 (E.D. Mich. 2016).

## PUNITIVE DAMAGES

43. Defendant Doe #1's actions were:

    a. Reckless;

    b. Showed callous indifference toward the rights of Plaintiff; and

    c. Were taken in the face of a perceived risk that the actions would violate federal law.

44. Plaintiff is entitled to an award of punitive damages against Defendant Doe #1 in his individual capacity, in order to punish him and to deter others.

## ATTORNEY'S FEES

45. Under 42 U.S.C. § 1988, if Plaintiff is the prevailing party in this litigation, then she will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

THEREFORE, Plaintiff prays for judgment under 42 U.S.C. § 1983 and 1988 against Defendant Doe #1 in his individual capacity, for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiff prays for

8

such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

## COUNT II
## VIOLATION OF CIVIL RIGHTS
## 42 U.S.C. § 1983 AND FOURTH AMENDMENT
## AGAINST DEFENDANT CITY
## FOR COMPENSATORY DAMAGES AND ATTORNEY'S FEES

46. Plaintiff re-alleges her prior allegations.

### COMPENSATORY DAMAGES
### 1ST ALTERNATIVE BASIS OF MUNICIPAL LIABILITY
### DELEGATION TO DEFENDANT DOE #1

47. As the first alternate basis for liability against Defendant City, the policy maker for Defendant, the mayor, or someone else, and that person delegated full authority and/or empowered the Defendant Doe #1's policy.

48. That delegation of authority by the actual policy maker of Defendant City placed the Defendant Doe #1 in a policy making position, and the acts of the Defendant Doe #1 may fairly be said to be those of the City of Detroit. *Id*. at 483, and *Kujawski v. Board of Com'rs of Bartholomew County, Ind*., 183 F.3d 734, 737 (7th Cir. 1999).

49. Those acts therefore subject Defendant City to liability for the constitutional violations of Defendant Doe #1. *Id*. at 483; *Kujawski v. Board of Com'rs of Bartholomew County, Ind*., 183 F.3d 734, 737 (7th Cir. 1999).

50. Deputy Chief Marlon Wilson ratified the DOA Report that stated that that video evidence exonerated Defendant Doe #1 (Exhibit 1) when the video evidence shows that "*at no time did any of the dogs charge at the officers, growl or try to bite them.*" (Exhibit 2.).

51. Defendant Doe #1's actions reflected in the video that Deputy Chief Wilson ratified plainly violates the City's written policy, Detroit Police Department Manual Directive 3-4.2 – 4.7 Dangerous Animals.

52. Defendant City routinely ratifies its police officer's shootings as reflected in its voluminous Destruction of Animal Reports that reflect that in virtually no circumstances has the City concluded that its police officers wrongfully shoot dogs.

### 2ND ALTERNATIVE BASIS OF MUNICIPAL LIABILITY – FAILURE TO TRAIN, SUPERVISE, CONTROL

53. As the second alternative basis for liability against Defendant City, Defendant City failed to properly hire, train, supervise, control and/or discipline the Defendant Doe #1 with respect to dog encounters.

54. Defendant City was thus deliberately indifferent to the rights of others in adopting its hiring and training practices, and in failing to supervise, control and/or discipline the Defendant Doe #1 such that those failures reflected a deliberate or conscious choice by Defendant City made from

10

among various alternatives. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

55. Those deficiencies were the moving force that caused Plaintiff damages. *Larson By Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996).

56. In light of the fact that it was the Defendant Doe #1 who engaged in the constitutional violations, the need to correct the deficiencies is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of Defendant City can reasonably be said to have been deliberately indifferent to the need. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

57. If Defendant City had properly hired, trained, supervised, controlled and/or disciplined Defendant Doe #1, the constitutional violations committed by the Defendant Doe #1 would not have occurred.

58. These failures by Defendant City to hire, train, supervise, control and/or discipline the Defendants Doe #1subject Defendant City to liability for the constitutional violations committed by Defendant Doe #1.

59. On information and belief, Defendant City had no policy or training in place in how to handle dog encounters, which was evident in Defendant Doe #1's actions alleged herein.

### COMPENSATORY DAMAGES

60.     Under 42 U.S.C. § 1983, Plaintiff is entitled to an award of compensatory damages against Defendant City.

### ATTORNEY'S FEES

61.     Under 42 U.S.C. § 1988 if Plaintiff is the prevailing party in this litigation, then she will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

THEREFORE, Plaintiff prays for judgment under 42 U.S.C. § 1983 and 1988 against Defendant City for compensatory damages in a fair and reasonable amount, for reasonable attorney's fees, and non-taxable expenses, for costs and such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

### COUNT III
### CONVERSION

75.     Plaintiff repeats her prior allegations.

76.     "Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438 (1960)(quoting *Nelson & Witt v. Texas Co.*, 256 Mich. 65, 70)).

77. Defendant Doe #1' shooting of Plaintiffs' dogs was a distinct act of dominion wrongfully exerted over Plaintiffs' dogs in denial of or inconsistent with her rights.

THEREFORE, Plaintiff requests relief under applicable law or in equity, including, without limitation, a judgment and an award of statutory treble damages and all reasonable costs, interest and attorney fees. M.C.L. § 600.2919a.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiff incorporates her prior allegations.

79. Defendant Doe #1's conduct described herein was extreme and outrageous conduct because it was beyond all possible bounds of decency and could be regarded as atrocious and utterly intolerable in a civilized community and would (and in fact has) cause an average member of the community would . . . exclaim, "Outrageous!"

80. Defendant Doe #1's actions described herein were intentional or reckless

81. Defendant Doe #1's actions caused Plaintiff severe emotional distress so severe that no reasonable person could be expected to endure it, including without limitation, severe horror, grief and anger over the loss of

her dogs, nausea, inability to eat, loss of sleep, inability to concentrate among others. *Haverbush v. Powelson*, 217 Mich. App. 228, 234-35 (1996).

THEREFORE, Plaintiff requests a judgment for damages, exemplary damages, reasonable attorneys' fees and costs and any other relief that the Court deems just and equitable.

Respectfully submitted,

OLSON PLLC


/s/ Christopher S. Olson_____
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
colson@olsonpllc.mygbiz.com
*Attorneys for Plaintiff*

December 19, 2019
Detroit, Michigan

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

                          Respectfully submitted,

                          OLSON PLLC

                          /s/Christopher S. Olson
                          Christopher S. Olson (P58780)
                          32121 Woodward Avenue
                          Suite 300
                          Royal Oak, Michigan 48073
                          (248) 672-7368
                          colson@olsonpllc.mygbiz.com
                          *Attorneys for Plaintiff*

December 19, 2019
Detroit, Michigan